METROPOLITAN LIFE INSURANCE COMPANY *v.* REYNOLDS.

4-4745

Opinion delivered October 18, 1937.

*Moore, Gray, Burrow & Chowning,* for appellant.
*Glover & Glover,* for appellee.

GRIFFIN SMITH, C. J. The only question involved in this appeal is whether there was any substantial evidence to sustain the jury's verdict that appellant was liable on a policy of insurance, on which judgment for $1,305, inclusive of penalty, was given.

On November 13, 1934, appellant issued its policy on the life of appellee's husband. Quarterly premiums were $5.59, the first having been paid shortly after delivery of the policy. The second installment was due February 13, 1935, the assured being entitled to 31 days of grace on all premiums. There was default as to the second premium, but application for reinstatement made March 27, 1935, was duly accepted. This application, signed by the assured, recited payment of the delinquent premium of $5.59. The third installment fell due on May 13, and was paid June 13.

It is alleged by appellant that default occurred with respect to the premium due August 13, and that there-

after no payments were made, the policy automatically lapsing 31 days after August 13, 1935.

The assured died January 8, 1936. Appellee, wife of the assured and beneficiary under the policy, testified that the policy lapsed near the end of the year—the latter part of 1935, and that it was reinstated in November, to the best of her memory. She denied that it lapsed in August, and produced a receipt which reads: ''Received of Geo. H. V. Reynolds $5.59 on policy No. 939407-A to reinstate for last qt. Metropolitan Life Insurance Co. W. O. Guerin.'' This receipt, appellee testified, paid the premium from November, 1935, until after the assured's death. The receipt, she said, was given to her husband by Mr. Guerin, admitted agent of appellant, while witness was out of town. Some time after her husband's death she found it among his papers. Asked if she knew what quarter it paid for, she answered: ''It said for the last quarter.'' The receipt was not dated.

Witness further testified that her husband had other receipts that had been kept in a bill fold, but he lost them. She thought there were four in addition to the one introduced. Asked what period the lost receipts covered, witness replied: ''I can't say just exactly, because I did not look at each one of them. The premiums were all paid by my husband, but I know he had other receipts showing other periods of time through the last part of the year. The premiums were all paid by my husband.'' Question: ''State whether or not this receipt was given at the time the policy was reinstated—you have stated that the policy was reinstated the latter part of 1935. Was this receipt given at the time the policy was reinstated?'' Answer: ''I said I did not know anything about the receipt until I found it.'' Question: ''You state positively that the policy did not lapse but once, is that correct?'' Answer: ''That is correct.'' Question: ''You do not know how many premiums were paid on this policy?'' Answer: ''I do not.'' Question: ''And you do not know what period of time this receipt covers?'' Answer: ''The last part of the year.''

W. O. Guerin testified that he issued the undated receipt at the time the policy was reinstated on March 27,

1935. His explanation was that the official company receipt could not be issued until the application for reinstatement had been approved at the home office in New York, where questions on reinsurability were passed upon. When the August premium was not paid, he talked with the assured, urging payment, but without effect. On behalf of appellant, in substantiation of its claim that the policy lapsed, the deposition of Leon C. Blackman, in charge of records of the New York office, was read in evidence. Mr. Blackman testified that the policy was reinstated but once—on March 27, 1935—and that no premiums were received after August, 1935.

The effect to be given appellee's testimony, viewed in its most liberal light, is that she had seen some policy receipts in her husband's bill fold; that she did not examine them as to dates; that she thought there were four such receipts, not including the undated one in question; that she had no personal information with reference to the undated receipt other than what the writing imported; that the insurance policy was reinstated but once, and that she thought this occurred in the latter part of 1935.

Appellant's testimony, undisputed except as to the circumstances, impressions, information and belief of appellee, is that the undated receipt was given for the quarter beginning February 13, 1935, and that the expression "for last quarter" did not refer to the last quarter of the year, or, in fact, to a calendar quarter; that there was but one reinstatement, this being on March 27, 1935, and that the policy lapsed thirty-one days after August 13, 1935.

The receipt, by its own terms, shows that it was given to reinstate the policy, but the added words, "for last quarter" created an ambiguity admitting of explanation by oral testimony. The admission of appellee on cross-examination that the policy was reinstated but once, and the introduction by appellant of the original application for reinstatement, dated March 27, 1935, show clearly that appellee was mistaken as to the date of reinstatement. On cross-examination the unsatisfactory nature of appellee's testimony is shown. In reply to a

question as to whether the policy had ever lapsed, she replied, "Not that I remember." Asked if she could say positively, she answered, "It did not." Witness later said that she would not be positive, and corrected this statement by adding, "Well, it was reinstated." The date of reinstatement was then fixed as of the last of 1935, "Best I remember."

The same uncertainty characterized appellee's reference to the lost receipts. It was not substantial. There is little doubt that appellee believed that the undated receipt evidenced payment for the last quarter of 1935, but testimony to the contrary is too conclusive to permit her beliefs and impressions to outweigh the affirmative evidence offered by appellant.

Another important factor must be considered. If appellee's assured had, in fact, paid the premium maturing August 13, the policy would have been paid to November 13, 1935. Thirty-one days of grace would have extended the protection to December 13. It is not contended that a single month's premium, as distinguished from a quarterly premium, was ever paid, and there is no provision in the policy for such payment.

In view of the record, we feel justified in holding that there was no substantial evidence before the jury upon which its verdict could be based, and there should have been an instructed verdict for appellant.

Reversed and dismissed.